

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Southern Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION,      ) | |
|                   ) | |

FEDERAL TRADE COMMISSION,  )

 Plaintiff,      )

     v.       )

              )  Case No. 1:99-01587-CIV-KING

AMERICAN TELNET, INC., a corporation, )

              )

MICHAEL ABRAHAM PARDES,  )  Magistrate Judge O'Sullivan
individually and as an officer of American )
TelNet, Inc.,        )

              )

TED LIEBOWITZ, individually and as an )  **PLAINTIFF'S MEMORANDUM**
officer of American TelNet, Inc., and  )  **OF LAW IN OPPOSITION TO**
              )  **LINDA PAIS' MOTION FOR**
MICHAEL SELF, individually and as an )  **INTERVENTION**
officer of American TelNet, Inc.,  )

              )

 Defendants.      )

              )

Plaintiff Federal Trade Commission (the "Commission") hereby opposes Linda Pais'

Motion to Intervene under Rule 24, Fed. R. Civ. P.  Linda Pais, representing herself and a class

of others similarly situated, has filed a lawsuit in New Jersey Superior Court against American

Telnet, Inc. ("ATN"), among other defendants.  The factual allegations in the Pais lawsuit

1

NON-COMPLIANCE OF S.D. L.R. 5.1.A1.





overlap to some extent with those in the instant action. Pais seeks intervention in the FTC's law enforcement action against ATN to obtain certain declaratory relief and attorneys' fees.

Both intervention of right and permissive intervention are inappropriate in this case. First, as discussed in more detail in Section II (A) below, the FTC's settlement with ATN does not in any way impede or impair Pais' New Jersey class action. To the extent that the FTC's settlement with ATN provides relief to members of the Pais class, this does not affect the underlying legal rights asserted by Pais, nor the rights of the class to be compensated for any damages found by the New Jersey court.[1] Rather, any relief provided to a member of the Pais class as a result of this settlement will be offset against any recovery in the Pais action to the extent necessary to prevent receipt of more than 100% recovery.[2] In addition, there is no overlap of claims where Pais' suit contains claims for relief for a class of consumers – parents that were charged for adult audiotext services accessed by their minor children – that the FTC settlement does not address.

To the extent that the Pais class seeks the same objectives as were obtained by the FTC, the FTC has more than adequately represented the interests of that consumer class. *See* Section II (B) below. The extensive injunctive and other relief obtained by the FTC provides redress to

---

[1] To the extent that Pais is concerned that the FTC settlement will undermine or reduce her ability to obtain attorneys' fees, these fees may still be awarded to the extent that the New Jersey court determines that such an award is appropriate. This is an issue for the New Jersey court to decide. It is inappropriate to take redress funds away from consumers in this case to pay Pais' attorneys for work on that case.

[2] Under the FTC's settlement with ATN, consumers are not required to release any claims they may have against ATN in order to obtain redress. Therefore, a class member that was able to recover fifty cents on a dollar through the FTC's redress fund would still be able to seek the remaining fifty cents under their state law theory in the Pais action.

2

affected consumers, prohibits any further abusive debt collection practices, and prospectively

enjoins ATN from the practices that Pais alleges are unlawful.   Finally, as discussed in Section

IV below, there are strong public policy arguments against allowing private parties to intervene

in governmental enforcement actions.   For all of these reasons, Linda Pais' Motion to Intervene

should be denied.

## I.    Background

American TelNet ("ATN" or the "defendant") is a major player in the "audiotext"

(phone-based audio entertainment) industry.  The stipulated settlement which Pais seeks to have

revisited has an extensive and relevant history.  In 1994, the Federal Trade Commission charged

ATN with violating Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) and the

Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act, 16

C.F.R. Part 308 (1992) (the "900-Number Rule"), which prohibits, *inter alia*, continued billing of

a consumer, after notification of a billing error, without correcting the billing error or conducting

a reasonable investigation in which the consumer is given an opportunity to dispute the charges.

As a result of this action, the Commission and ATN entered a consent decree[3] (the "1994

Consent Decree") that enjoined ATN from violating Section 5 and the 900-Number Rule,

required detailed record-keeping, imposed $500,000 in civil penalties, and provided $2 million in

consumer credits.

After entry of the 1994 Consent Decree, the Commission began to receive an increasing

number of complaints about American TelNet.  Based on this body of complaints, the

Commission's staff initiated a second investigation of this company's practices.  After

---

[3]  United States v. American TelNet, Inc. et. al., Civ-Nesbitt-94-2551 (S.D. Fla. 1994).

conducting an extensive investigation, Commission staff entered into negotiations which continued for a protracted period of time. Once the negotiations succeeded, the Commission filed a complaint and a proposed Final Judgment and Order (the "Order") in the United States District Court for the Southern District of Florida on June 8, 1999. The Commission's complaint charged American TelNet with again violating Section 5 and the 900-Number Rule. This Order resolved unlawful practices which had prompted tens of thousands of consumers to complain to ATN about charges on their telephone bills for "adult entertainment" and "psychic line" audiotext services. A significant percentage of consumers had reliable evidence that the calls accessing the services could not have been made from their telephones.

Some explanation of the underlying facts of this case may help to elucidate the current motion to intervene. ATN billed consumers for its audiotext services on the basis of ANI (Automatic Number Identification), a system similar to "caller ID" which identifies the line but not the telephone used in making a call. Therefore, when a third party accesses ATN's services by clipping onto a consumer's telephone line outside the home ("phreaking") or intercepting the line by hacking into the phone company's computer, an ANI record is created that shows a call from a consumer's number to ATN's service, even though the consumer has not used his telephone to make the call. Similarly, crossed wires can also result in an ANI record for a telephone line even though no call has been placed from that telephone. Despite the susceptibility to third-party fraud and technological and human error of ANI, and consumer complaints and documentation, ATN would: (a) repeatedly bill consumers after they had notified ATN of a billing error, (b) claim they had a legal obligation to pay, (c) fail to investigate their assertions of error and (d) threaten them with legal action and adverse credit reports.

4

The stipulated Order jointly filed by the Commission and ATN resolved all of the Commission's complaint allegations. The Honorable James Lawrence King signed and entered the Order on June 14, 1999. The Order requires, in addition to detailed conduct prohibitions and other injunctive relief, that ATN waive the right to collect $36.4 million it had billed to consumers between 12/6/94 and 12/31/97 and provide $1 million in credits to consumers who were illegally charged between 12/1/98 and entry of the Order. It also requires ATN to pay $2 million in redress to consumers who paid ATN and who, between 12/6/94 and entry of the Order, submitted a billing error notice to ATN asserting that (1) neither the consumer nor anyone else accessed ATN's audiotext services form the consumer's telephone, (2) the consumer's telephone had a 900-number block at the time the disputed calls were made, or (3) the line from which the service was accessed was not assigned to the consumer at the time the charges were incurred.

Unrelated to the FTC's investigation of ATN, on December 1, 1997 Linda Pais ("Pais") commenced a class action against ATN, Bell Atlantic Corp., Bell Atlantic New Jersey, and Corporate John Doe No. 1 in the Superior Court of New Jersey[4] alleging that ATN engaged and engages in a variety of wrongful, deceptive and illegal practices relating to its activities as a 900 number service bureau. The Pais complaint was brought as a class action on behalf of a class that includes, among others, at least some of those consumers for whom the Commission obtained redress in the Order. Pais sought substantially similar monetary and injunctive relief as provided by the Order that resolved the FTC's complaint. The exception is that in addition to the consumers encompassed by the Commission's action, Pais also sought relief for those consumers

---

[4] Pais v. American TelNet, Inc. et al., No. L-10168-97, (N.J. Super. Ct. Law Div. filed Dec. 1, 1997).

who were charged for calls made by persons under the age of 18 to phone numbers specifically requiring parental permission or authorization.[5]

Pais now seeks to intervene in this case, specifically requesting (1) a declaration of the rights of all consumers who may benefit from the settlement that their rights shall not be affected or impaired by the settlement, (2) a declaration that ATN shall be foreclosed from using the provision of any benefit provided by the settlement as a basis for dismissal or discontinuance of any such claim by any consumer, (3) a declaration that the Pais Action was a substantial factor in the decision by ATN to enter into the settlement and (4) an award of attorneys' fees and costs to counsel for Pais for the alleged benefit conferred by the Pais action.

## II   Intervention of Right is Inappropriate.

A movant must establish the following requirements to intervene as of right under Federal Rule of Civil Procedure 24(a)(2):

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by existing parties to the suit.

Purcell v. Bankatlantic Financial Corporation, 85 F.3d 1508 (11th Cir. 1996) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1212 (11th Cir. 1989)).  The Court should deny Pais' Motion to Intervene because, as we show below, disposition of the action will not impair or impede her

---

[5] The Commission did not include this class of consumers in its complaint because charges for unauthorized calls that are placed from a consumer's telephone, even if placed by a minor, do not violate the Commission's 900-Number Rule.  The Commission has recognized that consumers may have a remedy for such charges under state law.  However, the Order will inadvertently provide some debt forgiveness to these consumers as a practical consequence of ATN's stated inability to practicably determine consumers' basis for complaint in ATN's database of uncollected charges.

ability to protect her interests, and, to the extent that the stipulated settlement Order provides relief to members of the Pais class, the Commission has adequately protected her interests.

A.    The Order Will Not Impede or Impair Pais.

"One is entitled to intervention of right only if she 'is so situated that the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest.'" EEOC v. Eastern Airlines, Inc., 736 F.2d 635 (11th Cir. 1984) (quoting F. R. Civ. P. 24(a)).  The Eleventh Circuit has held that "if [the Rule 24 movant] can proceed with her own action independently of the [present] suit, then the settlement of the . . . suit cannot 'impair or impede' her ability to seek her own relief.  Therefore, she would not be entitled to intervention of right." Id. at 639.  The Order does not bind Pais, who is free to proceed with her class action.  To the extent that the Order provides relief to Pais class members, Pais may still prove that there has been a violation of New Jersey state law and seek whatever additional damages are available to those class members.  Consumers that apply for and receive redress pursuant to the Order do not waive any other rights they may have against ATN.  In addition to actual damages, Pais' complaint seeks punitive damages and attorneys' fees.  The only possible effect of the relief granted in the FTC case would be to offset the relief provided to class members under the Order from the total amount of damages proven in the Pais action.[6]

Furthermore, Pais' case is neither impeded nor impaired by the Order, because a substantial portion of the Pais complaint does not overlap at all with the FTC's complaint or the stipulated Order that resolves that complaint.  Pais can pursue the claim that ATN wrongly

---

[6] ATN appears to be a viable, ongoing concern.  There is no evidence that the redress provided by ATN pursuant to the Order will impede Pais' ability to collect damages from ATN should she prevail.

charged consumers for adult audiotext services accessed by minors from their parents'
telephones.[7]  She can also seek recovery for damage to consumers in the Pais class between 1991
and 1994, a time period not covered by the Order.[8]  Moreover, she can proceed with her claims
against defendants Bell Atlantic Corp., Bell Atlantic New Jersey, and Corporate John Doe No. 1,
which were not named defendants in the Commission's case against ATN.  Pais cites no
authority which indicates that the Order prevents her from further pursuing her claims.  On the
contrary, she agrees that she has the right to proceed.[9]  Consequently, the Order has not impaired
or impeded Pais' interest in her claim against ATN.

   B.   Pais' Interests are Adequately Represented Without Intervention.

   There is a presumption of adequate representation when an existing party seeks the same
objective as the would-be intervenors.  See Meek v. Metropolitan Dade County, 985 F.2d 1471
(11th Cir. 1993).  In this case, the FTC has more than adequately represented American
consumers, both through the extraordinary and detailed prospective injunctive provisions

---

[7]  Pais, in her Complaint in Intervention, makes much of the fact that the Order's
provisions concerning debt forgiveness may provide an incidental benefit to consumers that
contend minors made the call from their telephone.  It is unclear from Pais Complaint in
Intervention how prohibiting ATN to prospectively collect from Pais class members damages
Pais' claims.  Stopping potential future damage to class members does not impede Pais' ability to
argue and prove her claims that, at times relevant to her complaint, ATN engaged in practices
regarding these class members that violate New Jersey law and that caused economic and other
damages.  This claimed impediment to her action is inchoate at best.

[8]  In the complaint, Pais v. American TelNet, Inc., No. L-10168-97, (N.J. Super. Ct. Law
Div. filed Dec. 1, 1997), Pais indicates that consumers had been victimized "for the past six
years."

[9] See Letter from Pais to ATN of 7/1/99 ("We are deeply concerned with . . . any potential
contention by American TelNet that the settlement subverts, eliminates or affects in any way the
continuing rights and claims of all persons whom we allege to be victims of illegal and deceptive
conduct by American TelNet.  We believe any such contention would be improper.")

contained in the Order and through the large amount of debt forgiveness and two-million dollars

of direct consumer redress. In fact, to the extent that the FTC complaint overlaps with the Pais

complaint, the Order provides nearly identical relief to that requested by Pais.[10]

The proposed intervenors have the burden of coming forward with evidence to the

contrary. See Clark v. Putnam County, 168 F.3d 458 (11th Cir. 1999). Once the would-be

intervenors have carried their burden, the court returns to the general rule that adequate

representation exists "if no collusion is shown between the representative and an opposing party,

if the representative does not have or represent an interest adverse to the proposed intervenor,

and if the representative does not fail in fulfillment of his duty." Id. at 461 (quoting FSLIC v.

Falls Chase Special Taxing Dist., 983 F.2d 211 (11th Cir. 1993)). First, the Commission and Pais

had a shared objective. Both sought to provide redress to consumers and to enjoin ATN from

further engaging in deceptive practices.[11]   Second, Pais has not alleged that the Commission

colluded with ATN or that the Commission represented an interest adverse to Pais. Last, the

Commission has successfully represented the interests of American consumers in this action.

**III.   Permissive Intervention is Inappropriate.**

F. R. Civ. P. 24(b) allows permissive intervention when an applicant's claim or defense

---

[10] Pais even concedes that the Order will "implement much of the injunctive and declaratory relief that plaintiff has pursued for nearly two years," (Pais Emergency Motion for Rule 24 Intervention and Memorandum in Support Thereof at 9), and that "the redress fund will be used to provide restitution to a class of consumers on whose behalf plaintiff had actively litigated for almost two years," Id., providing relief that is "substantially similar to the relief that plaintiff sought." Id. at 10.

[11] The exception being those consumers who were charged for calls made by minors to phone numbers specifically requiring parental permission or authorization. As mentioned above, the FTC did not include this class of consumers in its complaint. Pais, however, can still seek a remedy under state law for this category of consumers.

9

and the main action have a question of law or fact in common.  However, it is wholly
discretionary with the Court whether to allow intervention under Rule 24(b), and even though
there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise
satisfied, the Court may refuse to allow intervention.  See Purcell v. Bankatlantic Financial
Corporation, 85 F.3d 1508 (11th Cir. 1996) (quoting Worlds, 929 F.2d at 595).  In exercising its
discretion the court shall consider whether the intervention will unduly delay or prejudice the
adjudication of the rights of the original parties.  Manasota-88 v. Tidwell, 896 F.2d 1318 (11th
Cir. 1990) (quoting F. R. Civ. Pro. 24(b)).  As discussed below, intervention would prejudice the
Commission and consumers by undermining the finality of the Court-approved settlement and
causing consumers who have been damaged by defendant's actions to wait even longer for
redress and would delay injunctive provisions designed to protect consumers.  Furthermore,
granting Pais' requested relief of attorneys' fees could result in reduced consumer redress.

The court should consider prejudice and delay from the consumers' perspective even if
they are not named parties.  In EEOC v. Eastern Airlines, Inc., 736 F.2d 635 (11th Cir. 1984), the
Eleventh Circuit upheld this court's decision to deny intervention that would "delay the rights of
those charging parties interested in partaking of the settlement."  Consumers waiting to receive
redress from the Commission's settlement with the defendants would be similarly delayed.  Also,
setting aside the Order could potentially cause further consumer damage by eliminating the
consumer protections contained in the injunctive provisions of the Order.  Conversely, denying
intervention would not prejudice Pais.  The Order provides her with substantially similar
injunctive provisions that she seeks in her class action.  Moreover, if she is unsatisfied with this,
the Order does not preclude her from continuing with her class action.

10

The existence of an alternate remedy may also bolster a denial of permissive intervention. See Worlds v. Department of Health & Rehabilitative Servs., 929 F.2d 591, 595 (11th Cir. 1991); See also Meek, 985 F.2d at 1479 ("The thrust of the [prejudice] inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party"). Thus, the fact that Pais is not bound by the Order and does have the alternate remedy of proceeding with her class action should weigh heavily in the Court's decision to deny permissive intervention.

Furthermore, in the interest of efficiency, applicants that proffer only duplicative evidence generally will not be allowed to intervene. See Moore's Federal Practice § 24.03 (3d ed. 1999) (citing American Lung Ass'n v. Reilly, 962 F.2d 258 (2nd Cir. 1992)) (intervention denied when electric utilities seeking to intervene offered only defenses already asserted by EPA); Cajun Elec. Power Coop., Inc. v. Gulf States Utils., 940 F.2d 117, 120-121 (5th Cir. 1991) (affirming denial of intervention of state utility commission because it "brings no unique arguments to the litigation"); Environmental Defense Fund, Inc. v. Costle, 79 F.R.D. 235, 243 (D.D.C. 1978) (denying intervention of utility in dispute regarding level of Colorado River because arguments of utility "will be cumulative of the arguments advanced by the other defendants"). The Commission conducted an extensive investigation of ATN over the course of nine months. The Commission carefully reviewed complaints from tens of thousands of consumers about ATN's charges. Through access letters and CIDs, the Commission obtained ample consumer complaint records and other documents and information from ATN indicating that ATN had violated and was violating Section 5 of the FTC Act and the 900-Number Rule. Pais has failed to indicate what, if anything, she would add if her motion was granted other than duplicative evidence and

11

identical arguments.

## IV.   Intervention in this Case Runs Contrary to Public Policy

There is strong public policy to prohibit private intervention in a governmental regulatory action brought in the interest of the public. "Acting in a type of representative capacity is a basic government function, and the business of government could hardly be conducted if, in matters of litigation, individual citizens were always entitled to intervene and assert individual points of view." Moore's Federal Practice § 24.03 (3d ed. 1999); *see also*, United States v. Hooker Chemicals, 749 U.S. 968 (2d Cir. 1981). The Commission has been charged with the duty of prohibiting unfair or deceptive acts or practices and unfair methods of competition in or affecting commerce. 15 U.S.C. § 45(a). There is no right of private action under Section 5 of the Federal Trade Commission Act, FTC v. Klesner, 280 U.S. 19 (1929), or the 900-Number Rule, 15 U.S.C. §§ 5711(c) and 5721(c).

A governmental entity that is asserting its status as a guardian or representative of all its citizens deserves special consideration when a court is determining whether it is an adequate representative of the interests of would-be intervenors. *See*, Washington v. Washington State Commercial Vessel Ass'n, 443 U.S. 658 (1979); Moore's Federal Practice § 24.03 (3d ed. 1999). A governmental entity acting as representative of its citizens is presumed to represent its citizens adequately. See, e.g., Edwards v. City of Houston, 78 F.3d 983, 1005 (5th Cir. 1996) ("when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises . . ."); Ragsdale v. Turnock, 941 F.2d 501 (7th Cir. 1991) (Posner, J., concurring) ("the government is presumed to be an adequate representative of a proposed intervenor when it is charged by law with

representing the proposed intervenor's interests.")  The Commission, a governmental entity

charged with the duty of protecting consumers, should be given this special consideration and

afforded the presumption of adequate representation.

The Commission successfully represented consumers in the action against ATN,

providing $39.7 million in write-offs, credits, redress and injunctive relief.  Pais is now

attempting to intercept a portion of the $2 million directed to consumers and set it aside instead

for her attorneys' fees.  Granting her Motion to Intervene would delay the provision of redress

and take money away from consumers.  In general, permitting individual consumers to intervene

in actions brought under Section 5 of the FTC Act would significantly impede the work of

Commission.

## V.      The Commission was not unjustly enriched by Pais' actions.

Pais argues that the redress fund should be used to pay her attorneys' fees because the

settlement came about as a result of her attorneys' work on the class action.  This simply is not

true.  The settlement was the product of nine months of investigation by the Commission's staff

and eight months of negotiations between the Commission counsel and the defendants.  As

mentioned above, the Commission had access to a consumer complaint database with tens of

thousands of complaints.  Utilizing access letters and CIDs, the Commission acquired

voluminous consumer complaint records and other documents and information from ATN.  The

Commission obtained, through CIDs, information about ATN's procedures for complaint

handling and billing and collection, including, *inter alia*, policy manuals, internal memorandums,

correspondence and customer service scripts.

The Commission had additional leverage not available to Pais in the form of the

13

government's power to seek civil penalties for violation of the 900-Number Rule and to seek a contempt remedy pursuant to the 1994 Consent Agreement described above. The Commission's statutory authority and intense efforts, not the efforts of Pais, led to the Commission's settlement with ATN.

## VI.    The FTC Did Not Act Improperly

Pais' Complaint in Intervention and Motion contain several allegations which are untrue. In paragraph 5 of Pais Complaint in Intervention, she avers that ATN failed to disclose the existence of the Pais action to the FTC.[12] This is untrue. ATN provided the FTC with a list of all pending lawsuits, including the Pais action, in December 1997. FTC staff reviewed the Pais complaint and determined, for all of the reasons discussed above, that the Pais lawsuit was not relevant to its investigation of and negotiations with ATN. Because the FTC had diligently and effectively represented the interests of American consumers, and because the ability of the Pais class to pursue its action against ATN was not impeded or impaired by the FTC's settlement with ATN, the FTC did not view it as necessary, or even relevant, to point out the existence of the Pais action to this Court. The Pais action is not relevant to the FTC's enforcement of Section 5 of the FTC act and the 900-Number Rule regarding ATN.

Pais' allegations of impropriety arising from the FTC's failure to disclose the pendency of its investigation are equally baseless. The FTC was prohibited by law from revealing the existence of its investigation of and negotiations with ATN to Pais. Section 6(f) of the FTC Act,

---

[12] An attorney at the FTC told Pais' attorney in an informal conversation following entry of the Order that he was unaware of the Pais action. ATN had informed FTC counsel, however, of the existence of the Pais action in written responses to the FTC's requests for documents and information. This information was reviewed by other FTC counsel. We apologize to the Court and the parties for any confusion and inconvenience caused by this error.

14

15 U.S.C. § 46(f), prohibits the sharing of privileged or confidential information with anyone other than law enforcement agencies. Section 21 of the FTC Act, 15 U.S.C. § 57b-2, sets forth strict guidelines prohibiting FTC staff from revealing the existence of an investigation into possible violations of Section 5, or any information gathered with respect to that investigation. The public policy behind these requirements is obvious. Public disclosure of a FTC investigation of possible law violations may cause substantial harm to a company. Furthermore, the Commission could not adequately pursue its mission of protecting consumers from unfair or deceptive acts and practices if it were required to balance the potential harm to innocent investigative targets every time it had a reason to suspect a potential law violation. This prohibition, of course, did not prevent ATN from disclosing the existence of the FTC investigation, and would not excuse an ATN failure to disclose such information in response to an appropriate discovery request. The FTC does not know whether Pais sought this information from ATN, or whether ATN provided it. However, the appropriate remedy for Pais, if ATN failed to provide information in discovery, is to seek appropriate sanctions from the New Jersey court. The New Jersey court has the power to evaluate Pais' requests, the adequacy of ATN's response, and the appropriate relief, if any.

Finally, Pais reads too much into the debt forgiveness provided by ATN. While it is true that Pais class members may obtain some prospective benefit, in that they will not continue to receive collection notices and will not be pressured into paying improper debts, there is no support for Pais' argument that ATN offered to provide broad rather than targeted debt

forgiveness to the FTC as part of a plot to subvert Pais' class action.[13] The reason proffered by ATN, that the cost of targeting the debt forgiveness to the consumers identified by the ATN complaint would far exceed the potential collections from consumers not covered by the FTC's complaint, appears plausible. Especially when, as described in Section II(A) above, this provision does not impede Pais ability to proceed.

## VI    Conclusion.

For the above-stated reasons, the Commission respectfully requests that this Court deny Pais' Motion to Intervene.

Respectfully Submitted,

Debra Valentine
General Counsel

Dated: July 28, 1999


FRANK GORMAN
Attorney
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580
(202) 326-3258

---

[13] It is noteworthy that ATN did not seek an Order provision requiring that consumers sign a waiver to be eligible for redress.

16

## Certificate of Service

I certify that a true and correct copy of this Plaintiff's Opposition to Linda Pais' Motion for

Intervention was served upon the following persons by first-class mail, postage prepaid, on July 27,

1999:

Kenneth J. Vianale, Esq.
The Plaza, Suite 900
5355 Town Center Road
Boca Raton, FL  33486

Ralph M. Stone, Esq.
Shalov, Stone & Bonner
276 Fifth Ave., Suite 704
New York, NY  10001

Lewis Rose, Esq.
Arent Fox Kintner & Kahn, PLLC
1050 Connecticut Ave., NW
Washington, DC  20036

Ronald Marlowe, Esq.
Martens Dunaj Marlowe Davis & Marlowe
201 South Biscayne Blvd.
Suite 880 Miami Center
Miami, FL 33131

Frank M. Gorman
Attorney for Plaintiff
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
(202) 326-3282