**ORIGINAL**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:99-CV-01587/KING

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN TELNET, INC., a corporation, MICHAEL ABRAHAM PARDES, individually and as an officer of American TelNet, Inc., TED LIEBOWITZ, individually and as an officer of American TelNet, Inc., and MICHAEL SELF, individually and as an officer of American TelNet, Inc.,<br><br>　　　　Defendants.<br><br>LINDA PAIS, on her own behalf and on behalf all others similarly situated,<br><br>　　Applicant for Intervention. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM OF APPLICANT LINDA PAIS
IN FURTHER SUPPORT OF MOTION TO INTERVENE**

Applicant Linda Pais respectfully submits this reply memorandum in further support of her motion for intervention. Intervention as of right and permissive intervention are appropriate here.

**ARGUMENT**

1. **The Overlapping Claims Give Applicant An Interest In This Case**

The responses of the parties to the primary action differ on certain key issues which serve to highlight the appropriateness of intervention. For example, while the FTC recognizes that the Pais action predates the FTC action here, that "Pais sought substantially similar monetary and injunctive relief as provided by the Order that resolved the FTC's complaint" (FTC Mem. at 5) and that the FTC's settlement will "inadvertently provide some debt forgiveness to these consumers" (FTC Mem. at 6 n. 5), American TelNet insists that Pais's claims of overlap are "untrue" (ATN Mem. at 7) and "inaccurate" (ATN Mem. at 8) and "completely false" (ATN Mem. at 10).[1]

The FTC's perspective on the overlap is far more credible than American TelNet's. The claims between the two cases do overlap, and, as a result of both the similar relief and what the FTC has termed "inadvertence," the overlap between the relief provided by the FTC settlement with American TelNet and that sought by applicant Pais in her New Jersey class action raises issues concerning the potential resolution by American TelNet of claims asserted elsewhere, without subjecting the relief that will be used to expunge those claims to a full fairness review.

---

[1] American TelNet also concedes that it has implemented additional procedures designed for consumers complaining about calls made by minors to obtain relief which it contends it submitted to the FTC for its approval. See Markowitz Decl. at ¶ 2. American TelNet does not explain why it submitted this new procedure to the FTC, but it is safe to assume that it was not done gratuitously.

2

In response, the FTC suggests that, to the extent the FTC settlement results in a recovery for the classes Pais represents, plaintiff Pais may pursue the additional remedies. FTC Mem. at 7.

There are two problems with this analysis. First, it is Pais's understanding that consumers seeking to participate in the consumer redress to be afforded by the FTC settlement will be asked to release American TelNet. To the extent any releases are being solicited in connection with the FTC settlement, they should either be withdrawn from the process or should clearly indicate that the releases in no way affect, impair or impede any common law claims the consumers may possess arising from being charged for the 900 number calls in question. Alternatively, if releases are not ultimately part of the process, plaintiff Pais seeks a declaration that her claims are in no way affected by the FTC settlement, something which the FTC apparently concedes cannot currently be provided since it argues that plaintiff may pursue supplemental remedies.

Second, without demeaning the achievement of the FTC settlement, its full scope still remains undocumented and less than clear. It is undisputed that, apparently through "inadvertence" and allegedly to ease American TelNet's administrative burden, the claims relating to calls made by minors, among others, are being included in the FTC settlement - yet the FTC settlement documents nowhere mention these claims. The fact that this inclusion is not clearly documented raises the question of whether the documentation is adequate.

It is clear from the record that there is substantial overlap between applicant Pais's case and the present FTC action.

## 2.  The FTC's Representation Was Inadequate

The parties insist that the FTC was an adequate representative of the intervention applicant's interests. Neither party disputes, however, the fact that the FTC settlement embraces claims as to which the FTC disavowed any interest - for example, the claims relating to charges for 900 number calls made by minors. Instead, the parties insist that as a governmental entity the FTC enjoys a presumption of adequacy as representative.

As the case law relied upon by the FTC and American TelNet makes clear, the presumption of adequacy is a "weak" presumption and the proposed intervenor's burden in overcoming this presumption is "minimal." *See Fed. Sav. & Loan Ins. Corp. v. Falls Chase*, 983 F.2d 211, 216 (11th Cir. 1993) (reversing denial of intervention); *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999) (reversing denial of intervention); *Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471, 1478 (11th Cir. 1993) (reversing denial of intervention).

In *Meek*, for example, the failure to appeal an issue as to which the intervenors sought review supported intervention. *Meek*, 985 F.2d at 1478. This is not unlike the present situation - the disavowal and failure to litigate claims which the FTC is settling.

Likewise, the FTC asks what intervention by applicant Pais would add to the case. Yet, it is clear that she would add

4

prosecution of additional issues that the FTC has seen fit to settle without litigating. Indeed, although the FTC's investigation undoubtedly does fully support and confirm the conclusion "that ATN had violated and was violating Section 5 of the FTC and the 900-Number Rule," the FTC has not deposed or interviewed or even met with Michael Pardes, the President of American TelNet and one of the defendants in both the present FTC case and the earlier 1994 FTC case. Nor have any other depositions been conducted, such as a deposition of defendant Liebowitz. Plaintiff Pais recently deposed Mr. Pardes and plaintiff has conducted other depositions and continues to pursue other discovery from American TelNet.[2]

Unfortunately, through inadvertence or unwittingly, the FTC's settlement is being used by American TelNet for purposes that exceed the scope of the FTC's intended result. The point is not that the FTC investigation was inadequate, but that its litigation of the claims now being settled with defendants seeking to manipulate this settlement to extinguish or impair valuable claims being litigated elsewhere was inadequate and that the litigation did not fully embrace all the claims that are now

---

[2] During the deposition of Mr. Pardes - a recidivist FTC Act violator - he confirmed that, with respect to the FTC settlement, no steps are being taken to inform consumers about the $37 million write-off, and that nothing is being done to notify local exchange carriers (LECs) of the write-off. *"We're going to write it off the books. That's all. That's it, period."* Pardes deposition at 98 (emphasis added.) "Well, no, we're not letting them [consumers] know. We're just writing it off the books." *Id.* "No, we're not [informing LECs]." *Id.* at 96. Since charges often appear on bills until paid - as occurs with applicant Pais here, for example - even the significance of the write off requires further evaluation.

5

being settled. We respectfully submit that both the FTC action, if reopened for further litigation, and the FTC settlement would materially benefit from joint prosecution at this stage.

### 3. American TelNet's Attack On The Pais Case Is False And Largely Irrelevant

Whereas the FTC opposes intervention based on various legal grounds (with which we take issue) American TelNet's response is largely a hostile effort to discredit this applicant by incorrectly casting her claims as frivolous and by falsely suggesting that she has not vigorously pursued her claims. American TelNet even goes so far as to state that Pais "did virtually nothing to prosecute her New Jersey Action until being served with American TelNet's motion for summary judgment." ATN Mem. at 14. American TelNet is plainly wrong.

The record in Pais's New Jersey action – with which we will not burden the Court unless asked to do so – reflects extensive litigation over the course of the past year and a half. Substantial discovery propounded to American TelNet, to which American TelNet falsely denied the existence of an FTC investigation, and extensive and repeated motion practice involving the Bell Atlantic defendants.[3] More importantly, the record in the New Jersey action also reflects <u>repeated</u> courtesies extended to American TelNet's four law firms, including numerous extensions and adjournments (all of which were at American TelNet's request), all of which together have now been

---

[3] Nor will we burden the Court with a description of the extensive consumer contact and informal investigation we have performed over the past year and a half.

characterized by American TelNet's counsel as a lack of diligence on Pais's part. Although plaintiff has never once denied American TelNet a request for an extension or adjournment - and there have been many - it hardly seems appropriate for American TelNet now to seek to use the delay inherent in such professional courtesy as a basis for rejecting intervention here.

In stark contrast to Pais's courtesy, we are also confronted with American TelNet's false discovery purposefully designed to mislead Pais's counsel. Although we do not expect this Court to adjudicate the sanctionable nature of the discovery conduct alleged, we respectfully must respond since American TelNet insists that it did not respond to discovery falsely, misleadingly pointing to one of Pais's document requests while ignoring several others. As the documents attached to American TelNet's papers in opposition to the present intervention motion make clear, specific requests for documents concerning governmental investigations about the same matters the FTC was investigating were answered "none" and "none exist."[4] American TelNet even supplemented its responses in 1999 without changing these false answers.[5] For illustrative purposes, plaintiff has attached as Exhibit A to this memorandum a table reflecting certain of plaintiff's document requests, American TelNet's false

---

[4] To date, American TelNet has not produced the FTC CID in the Pais New Jersey litigation.

[5] False discovery responses are common with this defendant. In sworn testimony, the President of American TelNet and its Chief Financial Officer each falsely insist that American TelNet 900 numbers are not sexual in nature, a preposterous position.

7

responses, and specific inquiries made by the FTC evidencing the falsity of American TelNet's discovery responses. The FTC's CID has been disclosed by American TelNet to plaintiff Pais only in the past few weeks in response to this motion.

The discovery in question is particularly relevant here because if American TelNet had responded truthfully to discovery when propounded, the present motion for intervention might have been averted.

Finally, American TelNet misreports that plaintiff Pais "approached the FTC seeking to administer" the FTC's redress fund. On the contrary, as American TelNet well knows, plaintiff's counsel specifically advised both the FTC and American TelNet in discussions in late June, that the FTC settlement could be amended to provide additional relief specifically addressing matters in the Pais complaint as well as allowing for plaintiff's counsel to assume the burdens of redress administration. Particularly given the fact that claims are being resolved in the FTC settlement without receiving mention, it remains an objective to achieve an express recognition of all claims being resolved by the FTC settlement.

## CONCLUSION

For the reasons set forth in applicant's opening memorandum and herein, applicant Pais respectfully submits that she is entitled to intervention as of right, or alternatively, that permissive intervention should be allowed.

Dated: August 4, 1999

Respectfully submitted,

**MILBERG WEISS BERSHAD HYNES & LERACH LLP**

By: _/s/ Kenneth J. Vianale_
Kenneth J. Vianale
(Fla. Bar No. 169668)
KJV@mwbhlny.com
Maya Saxena
(Fla. Bar No. 095494)
MS@mwbhlny.com

The Plaza, Suite 900
5355 Town Center Road
Boca Raton, FL 33486
Tel: (561) 361-5000
Fax: (561) 367-8400

Of Counsel:

Lee S. Shalov
Ralph M. Stone
Shalov Stone & Bonner
276 Fifth Avenue, Suite 704
New York, New York 10001
Tel: (212) 686-8004
Fax: (212) 686-8005

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded via First Class Mail to all counsel listed below this 4th day of August, 1999.

Lewis Rose, Esq.
D. Reed Freeman, Esq.
ARENT FOX KINTNER PLOTKIN & KAHN PLLC
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Oscar A. Sanchez
AKERMAN, SENTERFITT & EIDSON, P.A.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL  33131-1704

Attorneys for Defendants American TelNet Inc., Michael Abraham Pardes and Ted Liebowitz

Eileen Harrington, Esq.
Allen W. Ilile, Esq
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC  20580

For the Federal Trade Commission

William Jarblum, Esq.
Donald S. Lee, Esq.
BUCHALTER, NEMER, FIELDS & YOUNGER
A Professional Corporation
601 S. Figueroa Street, Suite 2400
Los Angeles, CA  90017

_____
Kenneth J. Vianale

*Table Showing Certain of Plaintiff's Document Requests,
American TelNet's False Responses and FTC Inquiries Evidencing Falsity*

| *Plaintiff's Document Request 8:* | *American TelNet's Response:* | *FTC's CID:* |
|---|---|---|
| All documents concerning all governmental, regulatory and/or law enforcement inquiries, investigations, and/or proceedings, of any kind, concerning: | | |
| (a) 900 blocking; | (a) *None*. | 12. Describe how a charge for call to a pay-per-call number for which ATN is the information provider, service bureau, billing entity or for which ATN otherwise provides billing and collection functions could appear on a consumer's bill if 900 call blocking were in place at the time the alleged telephone call was made. |
| (c) Any of the practices alleged to be wrongful in the complaint, including, but not limited to, charging for calls to 800 numbers and/or inadequately implementing procedures designed to prevent persons under the age of 18 from accessing pay-per-call services involving content which may be unsuitable for such persons; | (c) *None exist*. Prior to 1/1/95 American TelNet entered into a Consent Decree (United States of America v. American TelNet, Inc., et al.), a copy of which is attached and marked 00004 through 00025. | 17. Describe each different procedure ATN uses or has used to determine whether a caller who wishes to purchase pay-per-call or audiotext services is an adult above the age of 18. |
| (e) Any allegations of misconduct relating to the blocking or the failure to block 900 numbers from a telephone subscriber. | (e) *None*. (Emphasis added.) | |

***Plaintiff's Document Request 11:***

All documents concerning and/or constituting complaints and/or inquiries of any kind (informal, formal, legal, telephonic, written or otherwise) concerning charges incurred by any telephone service subscriber for outbound calls to 800 numbers, and all documents and correspondence relating to all such complaints.

***American TelNet's Response:***

None.

***FTC's CID:***

9. Describe each different process whereby a consumer may be billed for a call to an 800 number for which ATN has been an information provider, service bureau, billing entity or for which ATN otherwise has provided billing and collection functions ...